[Civ. No. 4107.   Fourth Dist.   Mar. 8, 1950.]

IMPERIAL IRRIGATION DISTRICT, Appellant, v. COUNTY OF RIVERSIDE, Respondent.

Horton & Knox for Appellant.

William O. Mackey and Horace L. Miller for Respondent.

BARNARD, P. J.—This is an action to secure a refund of taxes paid under protest.  The complaint, which was filed

on February 7, 1949, alleged, among other things, that certain real property located in Riverside County, which is owned and operated by the plaintiff district, had been assessed in Riverside County as property which had escaped taxation for the tax years running from 1939-1940 to 1945-1946, both inclusive; that the plaintiff paid these taxes under protest on December 18, 1947, and on July 12, 1948, filed a petition and application for a refund thereof with the Board of Supervisors of Riverside County; and that this petition was denied on September 20, 1948. A demurrer was sustained without leave to amend, and the plaintiff has appealed from the judgment which followed.

The appellant first contends that the property of an irrigation district is the property of the state and hence exempted from taxation by the provisions of section 1, article XIII of the State Constitution. The pertinent part of that section, with the two clauses numbered for convenience, provides that property (1) "such as may belong to . . . this state, or to any county, city and county, or municipal corporation within this state shall be exempt from taxation, (2) except such lands and the improvements thereon located outside of the county, city and county, or municipal corporation owning the same as were subject to taxation at the time of the acquisition of the same by said county, city and county, or municipal corporation; . . ." Appellant's contention is that its property belongs to the state and is exempt under clause (1). The respondent contends that an irrigation district is a municipal corporation within the meaning of this constitutional provision, and that clause (2) is applicable to the property here sought to be taxed. The point thus raised depends for its solution upon whether or not an irrigation district is to be considered a municipal corporation within the meaning of this provision of the Constitution.

The appellant relies mainly on the case of *Anderson-Cottonwood I. Dist.* v. *Klukkert,* 13 Cal.2d 191 [88 P.2d 685]. In that case, land within an irrigation district was sold to the district for nonpayment of an assessment. It was thereafter sought, in the county where the land was located, to assess it for general taxes on the theory that it was nonoperative property of the district and hence taxable. It was there held that the use to which the property was put is immaterial, since what we have called clause (1) of section 1 of article XIII provides an exemption on the basis of ownership, with-

out any limitation respecting the use of the property. The question of use was the only one then involved, the land was not situated in another county, and the provisions of clause (2) of the constitutional provision were neither applicable nor considered. While some of the language of that decision appears to treat the land as belonging to the state, it made no difference in that case whether the land belonged directly to the state or belonged to a municipal corporation created as a state agency. It was pointed out that the fundamental basis for the decision in certain prior cases, including *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 P. 1060, 17 A.L.R. 72], was that the property in question was either "owned by the state or held by a subordinate agency thereof," and was thus exempt from taxation.

In the case of *Turlock Irr. Dist.* v. *White, supra,* decided in 1921, the irrigation district was the "owner of land" situated in another county, which the other county sought to tax on the theory that the irrigation district was a municipal corporation and thus subject to a tax under the provisions of clause (2), which was added to section 1, article XIII of the Constitution by amendment in 1914. The court reviewed the argument in behalf of this amendment, which had been submitted to the voters. In so doing, the court emphasized the portion which, by way of illustration, referred to the invasion of other counties by the cities of San Francisco and Los Angeles in the development of their water projects, but passed lightly over the main purpose of the amendment, as stated in the argument, which was to remedy similar conditions and to remove all uncertainty "by a legal assurance that while natural resources within one county may be directly used for the upbuilding of another, lands or other property already upon the invaded county's tax roll shall continue to bear its share of maintaining the local government." The court adopted the view that the words "municipal corporation," as used in the 1914 amendment (clause (2)), should be given a strict technical interpretation and construed as referring only to cities. It was accordingly held that an irrigation district is not a "municipal corporation," although it was admitted that such a district is a public corporation for municipal purposes. A dissenting opinion was filed by Judge Sloane pointing out what he conceived to be the real purpose of the 1914 amendment, and contending that a strict technical construction should not be applied to the words "municipal corporation" as there used.

In *Laguna Beach Co. Water Dist.* v. *County of Orange,* 30 Cal.App.2d 740 [87 P.2d 46], the controlling question was whether the plaintiff, a county water district, was a municipal corporation within the meaning of the 1914 amendment to section 1, article XIII. Following the holding in *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 P. 1060, 17 A.L.R. 72], and certain other decisions deemed more or less analogous, it was held that such a county water district does not fall within the technical definition of a municipal corporation. In *Metropolitan W. Dist.* v. *County of Riverside,* 21 Cal.2d 640 [134 P.2d 249], it was pointed out that the purpose of the 1914 amendment was to protect and conserve the revenue of the invaded territory. With that purpose in mind it was held that the words "municipal corporation" should be construed to include a district made up of several municipalities and a municipal water district. The court there criticized and inferentially disapproved the statements appearing in the opinions in *Turlock Irr. Dist.* v. *White* and *Laguna Beach Co. Water Dist.* v. *County of Orange,* to the effect that the words "municipal corporation" in the constitutional provision were used "in the strict technical sense."

In *Rock Creek etc. Dist.* v. *County of Calaveras,* 29 Cal.2d 7 [172 P.2d 863], the facts are identical, in effect, with those involved in the instant case, except that the plaintiff in that case was organized as a public agency under the Water District Act [Stats. 1913, p. 815, as amended; 3 Deering's Gen. Laws, Act 9125]. The court reversed the judgment which had awarded the district a return of such taxes paid under protest. It expressly overruled *Turlock Irr. Dist.* v. *White* and *Laguna Beach Co. Water Dist.* v. *County of Orange,* and held that in line with the aim and policy of the 1914 amendment to section 1, article XIII, the term "municipal corporation," as used therein, "must be given a broad meaning unrestrained by the strict technical sense of the term." It was pointed out that the evil sought to be remedied by that amendment is the same whether the agency involved be an irrigation district, a water district or a city. Also, that it is immaterial, within the meaning of the constitutional provision, whether the agency in question be described as a municipal corporation in the technical sense, a quasi municipal corporation, or a public corporation for municipal purposes.

We consider the case of *Rock Creek etc. Dist.* v. *County of Calaveras* as controlling upon the point under considera-

tion, and as requiring a holding that the appellant is a municipal corporation within the meaning of this constitutional provision. While that case involved a district organized under the Water District Act and the appellant here was organized under the Irrigation District Act [Stats. 1897, p. 254, as amended; Deering's Gen. Laws, 1937, Act 3854; see Wat. Code, § 20500 et seq.] there is, as pointed out in that case, no rational basis for distinction in this regard between two such public agencies. As was there said, for the purposes in question, "An irrigation district and a water district are substantially the same."

The appellant further contends that, in any event, it was entitled to maintain an action for a refund of the taxes thus paid because of the provisions of sections 532.5 and 5096 of the Revenue and Taxation Code. Section 532.5 reads:

"The assessor shall not assess for years of escaped assessment occurring in whole or in part prior to January 1, 1947, real or personal property owned by a district which is a municipal corporation within the meaning of Section 1 of Article XIII of the Constitution. If any such assessments have been or are made they shall be canceled pursuant to Chapter 4 of Part 9 of this division as if levied or charged illegally and refunds in connection therewith, if any, shall be made pursuant to Chapter 5 of said Part 9 as if illegally collected."

That section became effective on April 29, 1948, before a demand for the refund here in question was made. The act adopting that section declared it to be an urgency measure. As reasons therefor, the act stated that a recent Supreme Court decision (*Rock Creek etc. Dist.* v. *County of Calaveras, supra*), had overruled a previous decision which had stood for 25 years, holding that the property of districts was not subject to property taxes; that because there was presently no statute of limitations on such taxation, districts were faced, retroactively, with a debt for back taxes for all of the escaped years; and that this liability for back taxes would impose a burden which would impair the ability of all such districts to function effectively, and of some to function at all.

The respondent contends that section 532.5, insofar as it requires a county to refund such taxes, is violative of section 1, article XIII of the Constitution because it attempts to revise the effective date of the 1914 amendment thereto; because it attempts to modify and annul a judicial determination of that

section; because it violates the provisions of that section which require that all property not specifically exempted should be taxed; because it compels a remission of taxes in violation of that section; and because it violates the provisions of that section requiring the uniform and equal taxation of all property.

Section 532.5 is a part of article 4, part 2, division 1 of the code, which provides for the assessing of escaped property under certain conditions and provides the procedure therefor. Section 532 of that article has long provided a limitation of two years upon the assessment of escaped personal property. That section was amended in 1947, extending that limitation to certain real property. Section 532.5 provides a similar limitation with a shorter period at the beginning, in connection with real property owned by certain districts. It also, by its terms, makes the cancellation and refund provisions of the code applicable thereto.

Section 532.5 does not change in any respect the basis and rules for taxation provided in section 1, article XIII of the Constitution. It does not conflict with the provisions of that section, but adds another limitation on the time within which corrections may be made with respect to certain taxes which might have been, but were not, assessed during prior years. It merely places a limit upon how far back the assessing authorities may go in correcting old errors in this regard. It cannot be held that the limit thus provided for was an unreasonable one, especially since these had become "escaped assessments" only because of a later interpretation of the law. Having given the right, under certain conditions, to assess back taxes on the theory that the property had been overlooked and had escaped assessment in prior years (now Rev. & Tax. Code, § 531) it was within the power of the Legislature to change those conditions in part, and to limit the time within which such a correction could be made. (*Southern Service Co.* v. *Los Angeles,* 15 Cal.2d 1 [97 P.2d 963].) This statute does not violate the uniformity rule since there is a natural and logical distinction between the lands of such a district, with its peculiar and special public functions, and the lands of cities, exercising different functions, or of individuals. Section 532.5 is a limitation statute in connection with procedural matters and does not in any way violate section 1 of article XIII of the Constitution.

The judgment is reversed with directions to the trial court

to overrule the demurrer and permit further proceedings not inconsistent with the views herein expressed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied March 29, 1950, and appellant's and respondent's petitions for a hearing by the Supreme Court were denied May 4, 1950.   Carter, J., voted for a hearing.