[Sac. No. 5989.   In Bank.   Feb. 18, 1949.]

THE CITY OF FAIRFIELD, Petitioner, v. COLIN C. HUTCHEON, as City Clerk, etc., Respondent.

Goodman & Goodman and W. U. Goodman for Petitioner.

Harold W. Kennedy, County Counsel, A. Curtis Smith, Assistant County Counsel, O'Melveny & Myers and James L. Beebe as Amici Curiae on behalf of Petitioner.

Kenneth I. Jones for Respondent.

Orrick, Dahlquist, Neff & Herrington as Amicus Curiae on behalf of Respondent.

TRAYNOR, J.—At a special election called by the city of Fairfield on April 13, 1948, the voters of the city approved by more than a two-thirds vote four propositions to create a bonded indebtedness of $125,000. The first two proposed that a bonded indebtedness be incurred ''for the improvement of . . . water works and water system, by the acquisition of certain land therefor, the repair, replacement and extension of the water mains in and for said City of Fairfield, the acquisition of an additional storage tank and booster pump, and equipment for said improvement of said water works and water system. . . .'' and ''for the improvement of the sewer system of the City of Fairfield by the repair, reconstruction and extension of its sewer mains. . . .'' The next two proposed that a bonded indebtedness be incurred for the construction of streets and bridges and the acquisition of street equipment, and for the construction of a firehouse and the acquisition of fire equipment.

The election was held under a bond act of 1901 that authorizes municipal corporations to incur a bonded indebtedness for the ''acquisition, construction or completion of any municipal improvements.'' (Stats. 1901, p. 27, and amendments, 2 Deering's Gen. Laws, Act 5178.) After the bonds were approved by the voters, the city council adopted an ordinance providing for the issuance of the bonds, but the city clerk refused to countersign and issue them on the ground that the ''repair'' of the water and sewer systems, included

among the purposes stated in the first two propositions, is not a purpose authorized by the bond act. The city of Fairfield seeks a writ of mandamus to compel the city clerk to countersign and issue the bonds.

Respondent contends that the repair of the water and sewer systems is not included within the meaning of "acquisition, construction or completion" of municipal improvements, and is therefore not a proper purpose for a bonded indebtedness. (See *City of Long Beach* v. *Boynton,* 17 Cal. App. 290, 295-296 [119 P. 677].) It is not necessary, however, to decide that question, for we have concluded that the Validating Act of 1948 (Stats. 1948, p. 146 [3 Deering's Gen. Laws, Act 8925a]), which became effective on April 29, 1948, 16 days after the election, supplied the necessary legislative authorization for the issuance of the bonds, even if certain purposes of the proposed indebtedness were unauthorized at the time of the election.

It has been held that the Legislature may authorize the issuance of municipal bonds approved by the voters, even though the purpose of the proposed indebtedness was unauthorized at the time of the election. (*City of Redlands* v. *Brook,* 151 Cal. 474, 478 [91 P. 150]; *City of Sacramento* v. *Adams,* 171 Cal. 458, 464 [153 P. 908].) Nevertheless it is contended that section 18 of Article XI of the California Constitution requires that the purposes of the proposed indebtedness be stated to the voters at the time of the election; that consequently the purposes of the bond proposal must be authorized at the time it is submitted to the voters; and that therefore the Legislature cannot by a retroactive statute render a bond issue valid when the purposes thereof were unauthorized at the time of the election.

Section 18 provides: "No county, city, town, township, board of education, or school district, shall incur any indebtedness or liability in any manner or for any purpose exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified electors thereof, *voting at an election to be held for that purpose. . . .*" (Italics added.) The italicized phrase is emphasized to support the contention that the purposes of the proposed indebtedness must be authorized at the time of the election. It is clear, however, that this phrase refers to "qualified electors thereof" to make it plain that the vote required is not two-thirds of all the qualified electors but only two-thirds of those voting at the election. The words

"that purpose" refer to the purpose for which the election is held. The election is held for the purpose of determining whether or not the required number of electors agree that the indebtedness be incurred. There is no requirement in section 18 that the purposes of the indebtedness be authorized at the time of the election. The plain meaning of the section is that whatever the purpose of the indebtedness, it cannot be incurred without the two-thirds vote specified in the section. There is nothing therein that compels a departure from the rule established by the *City of Redlands* and *City of Sacramento* cases, *supra*.

■ Respondent contends that the Validating Act of 1948 was not intended to authorize the issuance of bonds approved for a purpose that was previously unauthorized. Section 5 of the act provides: "All acts and proceedings heretofore taken by or on behalf of any public body under any law, or under color of any law, for the authorization, issuance, sale, or exchange of bonds of any such public body for any public purpose are hereby confirmed, validated, and declared legally effective. This shall include all acts and proceedings of the governing board of such public body and of any person, public officer, board or agency heretofore done or taken upon the question of the authorization, issuance, sale, or exchange of such bonds." This section specifically provides that all "acts and proceedings" previously taken for the authorization or issuance of bonds for "any public purpose" are validated. Such "acts and proceedings" include the submission to the voters of the question whether an indebtedness should be incurred for the purpose of repairing the sewer and water systems, which is clearly a public purpose. It was held in *City of Redlands* v. *Brook, supra,* 151 Cal. 474, 478, that such a statute (Stats. 1907, p. 104) authorized the issuance of bonds approved for a purpose that was previously unauthorized.

■ Respondent contends, however, that section 8(a) of the Validating Act limits its application to the correction of procedural errors in carrying out the provisions of the bond act. Section 8(a) provides: "This act shall be limited to the correction of defects, irregularities, omissions, and ministerial errors in carrying out statutory provisions which the Legislature originally could have omitted from the law under which such acts or proceedings were taken, provided that this act shall also operate to supply such legislative authorization as may be necessary to validate any such proceedings

heretofore taken which the Legislature could have supplied or provided for in the law under which such acts or proceedings were taken.'' The proviso in the foregoing section demonstrates that the act was intended to supply the legislative authorization necessary to validate the proceedings heretofore taken. There can be no doubt that the Legislature could have provided in the law under which the proceedings were taken that indebtedness could be incurred for the repair of sewer and water systems. In *Board of Supervisors* v. *Cothran*, 84 Cal.App.2d 679, 685, 686 [191 P.2d 506], it was held that the Validating Act of 1947 [Stats. 1947, ch. 1335; 3 Deering's Gen. Laws, Act 8925] did not authorize a high school district to issue bonds for a purpose that was unauthorized at the time of their approval, but was limited to the correction of defects, irregularities and ministerial errors. In enacting the 1948 act, which became effective approximately one month after the decision in the Cothran case, the Legislature followed substantially the language of the 1947 act, but added the proviso to section 8(a). The Legislature evidently added this proviso in view of the litigation in *Board of Supervisors* v. *Cothran, supra,* to insure the validation of bonds that were previously approved for an unauthorized purpose.

Let the peremptory writ issue as prayed.

Gibson, C. J., Shenk, J., Carter, J., Schauer, J., and Spence, J., concurred.

EDMONDS, J.—The record in this case shows that, by an overwhelming vote, the people of Fairfield approved the issuance of bonds for the repair of the water and sewer systems. Unquestionably, the necessity for such repairs has been a matter of concern to the citizens and the municipal officers, with considerable doubt as to the scope of the bond act of 1901. Under these circumstances, the litigation does not fall within the category of collusive actions brought for the purpose of obtaining judicial approval of acts which have placed extensive tax obligations upon a community. (See dissents in *City of Whittier* v. *Dixon,* 24 Cal.2d 664, 668 [151 P.2d 5, 153 A.L.R. 956]; *City and County of San Francisco* v. *Boyd,* 22 Cal.2d 685, 707 [140 P.2d 666]; *City and County of San Francisco* v. *Linares,* 16 Cal.2d 441, 448 [106 P.2d 369].) Moreover, briefs of amici curiae, on behalf of both the petitioners and the respondents, have presented substantial questions of law. Therefore, it fairly may be said that this pro-

ceeding is not a perfunctory one in which a municipal officer, for the obvious purpose of laying the basis of a suit, has refused to act as directed by the law and his immediate superiors.

For these reasons and because I agree with the construction placed upon the pertinent statutes by Mr. Justice Traynor, I concur in the judgment.